348 A.2d 103
**COMMONWEALTH of Pennsylvania**
**v.**
**Robert James COOLEY, Appellant**
**(two cases).**

Supreme Court of Pennsylvania.

Submitted April 8, 1975.

Decided Nov. 26, 1975.

Alfred J. Di Bona, Jr., Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

On the morning of February 27, 1972, Clarence Butts was fatally wounded in his apartment in Philadelphia. James Morris, a friend of Butts who lived nearby and was visiting him, suffered a gunshot wound of the neck in the same incident. The appellant, Robert James Cooley, was convicted by a jury of murder in the first degree for the death of Butts and of assault with intent to murder for the shooting of Morris. His post trial motions were denied and a sentence of life imprisonment was imposed.[1] This direct appeal followed.[2]

Morris testified that he arrived at Butts' first floor front apartment at approximately 9:00 a. m. on the fatal day. Shortly thereafter Cooley, who lived in the adjacent first floor rear apartment, knocked at the front door. He was admitted by Morris who had seen appellant at Butts' residence on prior occasions and knew him as "Jim Dandy". Butts, an invalid, was seated on his bed and remained immobile during the entire episode which followed. Seconds after entering, appellant drew a pistol and commenced firing. The first two shots struck neither Butts nor Morris despite the close proximity of the three men in the room. A third shot discharged errantly as Morris knocked the gun from the appellant's hand. Appellant then retrieved the gun and shot Morris in the neck. Morris, although retaining consciousness, collapsed on the floor. In consequence, he did

1. A sentence of 3½ to 7 years for the assault with intent to murder conviction was suspended by the sentencing judge.

2. The appeal of the judgment of sentence on the murder conviction was taken directly to this Court pursuant to § 202(1) of the Appellate Court Jurisdiction Act. Act of July 31, 1970, P.L. 673, No. 223, art. II, 17 P.S. § 202.202(1) (Supp.1975–1976). And pursuant to § 503(c) of the same Act, 17 P.S. § 211.503(c) (Supp. 1975–1976), the appeal of the judgment of sentence on the assault conviction was transferred to this Court by the Superior Court.

not see the fifth shot fired, but he heard it and heard the door to the apartment close a few moments later. By the time Morris was able to get to his feet, appellant had departed and Butts was lying wounded on the floor. Butts hollered: "Get some help, get somebody, get somebody." Morris hastened to his cousin's nearby apartment and telephoned to the police.

Morris told the police that Butts had been shot and that "[t]he man who shot me is in the first floor, the rear apartment [of Butts' building]." Proceeding to Butts' apartment at approximately 9:30 a. m., the police discovered Butts lying on the floor near his bed moaning and bleeding from a wound in his back.[3] The investigating officers testified that Butts, in response to their inquiry as to what had happened, stated: "I was shot by Jim Dandy." [4] Then motioning with his hand toward the rear apartment, Butts added: "He's back there." Butts was rushed to a hospital where surgery proved unavailing; he died from the gunshot wound at 2:30 p. m. the same day.

Officers remaining at the scene arrested appellant in his apartment. A search uncovered a .32 caliber revolver in the trash bin at the rear of the apartment building; the subsequent ballistic test revealed that the gun was the one which was used to kill Butts.

Testifying on his own behalf, Cooley stated that the gun had not been in his possession on the day of the shooting and that it was impossible for him to have been in Butts' apartment at the time of the shootings because he was then suffering from an epileptic seizure, during which he was unconscious and incapable of any physical

3. The medical examiner who later performed an autopsy on Butts testified that the fatal .32 caliber bullet entered the victim's mid-back near the spinal column and then penetrated his lungs, intestines and abdomen in succession.

4. As indicated above, it was by this name that appellant was known to Morris and apparently also to Butts. The appellant testified that he was not known by this name.

action. Cooley also denied knowing the decedent or Morris except in passing and denied that he was known as "Jim Dandy".

■■ Appellant presents four grounds for reversal. We find that they either have not been properly preserved for appellate review [5] or are devoid of merit. Accordingly, we affirm.

Appellant asserts that the lower court committed reversible error in admitting into evidence as either a dying declaration or a res gestae statement decedent's statement naming the appellant as his assailant. Appellant argues that, on the facts of this case, neither of those exceptions to the hearsay rule provides an adequate legal basis for the statement's admission. As did the trial court, we find that the statement was admissible on either basis.

■ In *Allen v. Mack*, 345 Pa. 407, 28 A.2d 783 (1942) the res gestae exception for spontaneous or excited utterance was defined as follows:

"A res gestae declaration may be defined as a spontaneous declaration by a person whose mind has been suddenly made subject to an overpowering emotion

---

5. Appellant assigns as error on this appeal two points, neither of which was properly preserved for appeal. The first is the admission into evidence of the murder weapon on the ground that it was the product of an illegal search. No motion was made pretrial to suppress this evidence pursuant to Pa.R.Crim.P. 323, nor was any objection made to its admissibility when offered at trial. Although the point was raised in a motion for new trial, this was too late. See *Commonwealth v. Lopez*, 455 Pa. 353, 318 A.2d 334 (1974); *Commonwealth v. Williams*, 454 Pa. 261, 263, 311 A.2d 920, 921 (1973).

The second assignment pertains to that portion of the trial court's charge to the jury as to the bearing of Cooley's epileptic condition on his capacity to commit the crime. No specific objection was taken to the charge in this regard, and further consideration of the question was thereby waived. *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974); *Commonwealth v. Watlington*, 452 Pa. 524, 306 A.2d 892 (1973). Cf. *Commonwealth v. Williams*, 463 Pa. 370, 344 A.2d 877 (1975).

caused by some unexpected and shocking occurrence, which that person has just participated in or closely witnessed, and made in reference to some phase of that occurrence which he perceived, and this declaration must be made so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective faculties." 345 Pa. at 410, 28 A.2d at 784.[6]

McCormick offers two basic requirements for admission of such a declaration under the excited utterance exception: "First, there must be some occurrence or event sufficiently startling to render normal reflective thought processes of an observer inoperative. Second, the statement of the declarant must have been a spontaneous reaction to the occurrence or event and not the result of reflective thought." McCormick, *Evidence*, § 297 at 704 (2d ed. 1972). Here, there can be no doubt that the declarant's having been shot was an event which is sufficiently startling to satisfy the first element. See *Commonwealth v. Noble*, 371 Pa. 138, 88 A.2d 760 (1952). Appellant does not contest this, but argues that the requisite spontaneity of the second element is lacking here because of the time lapse between the shooting and the statement and because the statement was made in response to police questioning. We disagree.

 The spontaneity of such statements is, of course, dependent on the peculiar facts and circumstances of each case. We have held that time lapses equal to and greater than that present here do not bar

6. As noted recently in *Commonwealth v. Coleman*, 458 Pa. 112, 116, 326 A.2d 387, 389 (1974) (opinion announcing the decision of the court), there are four distinct exceptions to the hearsay rule which fall within the ambit of res gestae. McCormick identifies them as: (1) declarations of present bodily conditions; (2) declarations of present mental states and emotions; (3) excited utterances; and (4) declarations of present sense impressions. McCormick, *Evidence*, § 288 at 686 (2d ed. 1972). We are here concerned only with the excited or spontaneous utterance exception.

the admission of a statement where the spontaneity born of excitement is otherwise satisfactorily shown to exist. *Commonwealth v. Banks,* 454 Pa. 401, 311 A.2d 576 (1974) (15–20 minutes); *Commonwealth v. Cheeks,* 423 Pa. 67, 223 A.2d 291 (1966) (45 minutes). We have also held repeatedly that the mere fact that a statement is made in response to a question does not prevent its admission as a res gestae statement. *Commonwealth v. Banks, supra; Commonwealth v. Edwards,* 431 Pa. 44, 244 A.2d 683 (1968); *Commonwealth v. Stokes,* 409 Pa. 268, 186 A.2d 5 (1962); *Commonwealth v. Rumage,* 359 Pa. 483, 59 A.2d 65 (1948); *Commonwealth v. Harris,* 351 Pa. 325, 41 A.2d 688 (1945). It is true, of course, that in some instances the time lapse may be so long or the question and answer exchange so unhurried and reflective as to require a finding of nonspontaneity, but such was not the case here. The declarant had been shot only 15 or 20 minutes before making the statement; he had not moved from the spot where he had fallen; he was alone until the arrival of the police and was bleeding and moaning; and the man he named as his assailant lived in an adjacent apartment and could have returned at any time during the 15–20 minute interlude. These circumstances clearly demonstrate that Butts' words constituted an "excited utterance" which was not born of design or *reflection.*[7]

■■ Moreover, the statement is also admissible under the dying declaration exception to the hearsay rule. Before an accusatory declaration may be admitted as a

---

7. What was said recently in this writer's concurring opinion in *Commonwealth v. Coleman,* 458 Pa. 112, 326 A.2d 387 (1974) is equally applicable here:

"The conclusion is irresistible that this declaration was the victim's spontaneous reaction to the attack upon [him] only minutes before. There was no evidence that the statement was premeditated or in any way the product of design on the declarant's part." *Commonwealth v. Coleman, supra,* 458 Pa. at 123, 326 A.2d at 392. (Concurring opinion of Pomeroy, J., joined by Mr. Justice Roberts and Mr. Justice Nix.)

dying declaration, the evidence must demonstrate that at the time the statement was made death was imminent, that the declarant had a sense of impending death and that death did ensue. *Commonwealth v. Speller*, 445 Pa. 32, 282 A.2d 26 (1971). Appellant argues that the prosecution failed to show that Butts believed his death to be imminent at the time he made the statement.

Of course, the best evidence of this necessary element would be a direct statement by the victim. See, e. g., *Commonwealth v. Edwards, supra; Commonwealth v. Logan*, 361 Pa. 186, 63 A.2d 28 (1949). This sense of impending death may, however, be inferred from circumstances, such as the nature of declarant's wounds. *Commonwealth v. Gause*, 459 Pa. 595, 330 A.2d 856 (1975); *Commonwealth v. Smith*, 454 Pa. 515, 314 A.2d 224 (1973); *Commonwealth v. Hawkins*, 448 Pa. 206, 292 A. 2d 302 (1972); *Commonwealth v. Speller, supra; Commonwealth v. Plubell*, 367 Pa. 452, 80 A.2d 825 (1954). Here, the deceased was shot in the back and the bullet proceeded through his lungs, his intestines and his abdomen. The nature of this wound and the pain and bleeding which accompanied it provide sufficient circumstances, in our judgment, from which the requisite sense of impending death can properly be inferred.[8]

Appellant also asserts that the statement does not qualify for admission as a dying declaration because

---

8. There are numerous Pennsylvania cases which provide examples of the types of wounds from which the requisite sense of impending death has been inferred. See, e. g., *Commonwealth v. Hawkins*, 448 Pa. 206, 292 A.2d 302 (1972) (bullet wound of vital organs); *Commonwealth v. Speller*, 445 Pa. 32, 282 A.2d 26 (1971) (bullet wound of the head); *Commonwealth v. Smith*, 424 Pa. 9, 225 A.2d 691 (1967) (mutilation); *Commonwealth v. Edwards*, 380 Pa. 52, 110 A.2d 216 (1955) (bullet wound of the mouth); *Commonwealth v. Knable*, 369 Pa. 171, 85 A.2d 114 (1952) (bullet wound of the abdomen); *Commonwealth v. Plubell*, 367 Pa. 452, 80 A.2d 825 (1951) (stab wound); *Commonwealth v. Peyton*, 360 Pa. 441, 62 A.2d 37 (1948) (bullet wound); *Commonwealth v. Jones*, 341 Pa. 541, 19 A.2d 389 (1941) (severed spinal cord); *Commonwealth v. Barille*, 270 Pa. 388, 113 A. 663 (1921) (bullet wounds to vital parts).

it was made in response to the questioning of the police. As with the excited utterance exception, this fact alone will not bar the statement's admission as a dying declaration. *Commonwealth v. Hawkins, supra; Commonwealth v. Edwards, supra.*

Appellant contends that, even if the statement was properly admitted, the lower court erred in its charge to the jury with respect to dying declarations.[9] He urges that the trial court should have instructed the jury to assess for themselves whether the decedent believed he was about to die as he made the accusatory statement.[10] That determination, however, is solely for the court, to be made incident to a decision on the statement's admissibility. That decision, of course, is one of law. Factual questions which are preliminary to a legal determination of admissibility of evidence, including hearsay exceptions such as dying declarations, are simply not within the province of the jury. *Commonwealth v. Speller,* 445 Pa. 32, 282 A.2d 26 (1971); *Commonwealth v. Edwards,* 431 Pa. 44, 244 A.2d 683 (1968). See generally, *McCormick, supra,* § 53 at 121–125; 9 Wigmore, *Evidence,* § 2550 at 501–503 (3d ed. 1940). As we held in the cited cases, the customary general charge on credibility of the witnesses and the weight to be accorded their testimony is all that is required. The charge of the trial court in this case was plainly adequate in this respect.

Judgments of sentence affirmed.

9. Of course, even if appellant were correct, the error would be harmless since the statement was also admissible as an excited utterance.

10. Unlike appellant's earlier complaint of an error in the charge, this point has been preserved for review by a specific objection made prior to the retirement of the jury for deliberation.