364 A.2d 915

**COMMONWEALTH of Pennsylvania**

v.

**William LITTLE, Appellant.**

Supreme Court of Pennsylvania.

Argued June 30, 1976.

Decided Oct. 20, 1976.

Chas Lowenthal, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

OPINION OF THE COURT

MANDERINO, Justice.

Appellant, William Little, was found guilty of voluntary manslaughter following a jury trial on July 16, 1973. Post-verdict motions were denied, and appellant was sentenced to not less than four and one-half nor more than ten years imprisonment. This appeal followed.

The evidence presented at trial showed that on January 27, 1973, at approximately 3:18 a.m., police officers on patrol responded to a radio call and found a man, later identified as the decedent, Richard Jones, lying in a semi-conscious state on the sidewalk. The officers could see that Jones was bleeding and therefore transferred him to a nearby hospital. Jones died on February 18, 1973, of complications resulting from two gunshot wounds of the body. The prosecution's medical witness testified that death did not normally result from the kind of wound suffered by the decedent.

Detective Donald Reice of the Philadelphia Police Department testified that he was assigned to investigate the shooting, and that he went to the hospital at approximately 4:00 a.m., January 27, 1973, to interview the victim Richard Jones. Upon arriving at the hospital Detective Reice learned that the victim was unconscious and in critical condition and that he could not be interviewed. Subsequently, Detective Culbreth, also of the Philadelphia Police Department, went to the hospital, arriving at

approximately 9:15 a.m., January 27, 1973.  Detective Culbreth interviewed the victim for approximately five minutes at that time.  During this conversation, the decedent stated that he had been shot by the appellant.

Over appellant's objection, Detective Culbreth was permitted to testify at trial as to the substance of the above mentioned conversation with the decedent.  Appellant now urges that it was error for the trial court to allow the victim's statement to be admitted into evidence because that statement was neither part of the "res gestae" of the homicide, nor was it a "dying declaration."  We agree with appellant, and reverse the judgment of sentence and remand for a new trial.

The prosecution argues that the detective's testimony as to his conversation with the decedent is admissible as an exception to the hearsay rule under either the dying declaration exception or under the spontaneous utterance, res gestae, exception.  This Court has recently discussed both of these exceptions to the hearsay rule in *Commonwealth v. Cooley*, 465 Pa. 35, 348 A.2d 103 (1975), and a comparison of the instant appeal with the facts in *Cooley* will illustrate the error in the prosecution's position here.

Briefly stated, the pertinent facts in *Cooley* were as follows.  The decedent in *Cooley*, having been shot in the neck by *Cooley*, collapsed to the floor.  Police arrived at the scene less than thirty minutes after the shooting, and discovered decedent on the floor near his bed moaning and bleeding from a neck wound.  The investigating officer testified that, in response to his inquiry as to what happened, the decedent stated "I was shot by Jim Dandy [appellant]."  The victim was then rushed to the hospital where, five and one-half hours later, he died from the gunshot wound.  On these facts we held that the decedent's statement was admissible either as a dying declaration or as a res gestae exception to the hearsay rule.

■ The rule permitting res gestae declarations to be introduced into evidence is, of course, an exception to the hearsay rule. As stated in *Commonwealth v. Cheeks*, 423 Pa. 67, 70, 223 A.2d 291, 293 (1966):

"The principle is based upon the rationale that a spontaneous declaration of an individual who has recently suffered an overpowering and shocking experience is likely to be truthful. (Citation omitted.) Such evidence is limited to declarations supporting the conclusion that the statements were spontaneous utterances of thought created by, or emanating from, the litigated act, and so near in time thereto as to exclude the possibility that they were the product of premeditation or design."

The evidence must show that the declaration was spoken under conditions which ensured that it is not the result of premeditation, consideration or design, and it cannot be in the form of a narration or attempted explanation of past events.

■ Quoting from *Allen v. Mack*, 345 Pa. 407, 410, 28 A.2d 783, 784 (1942), the *Cooley* court defined spontaneous or excited utterance exception to the hearsay rule as follows:

"A res gestate declaration may be defined as a spontaneous declaration by a person whose mind has been suddenly made subject to an overpowering emotion caused by some unexpected and shocking occurrence, which that person has just participated in or closely witnessed, and made in reference to some phase of that occurrence which he perceived, and this declaration must be made so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective faculties."

*Id.* at 40, 348 A.2d at 106.

We continued in *Cooley* to state that "the spontaneity of such statements is, of course, dependent on the peculiar facts and circumstances of each case." Reviewing these facts and circumstances in *Cooley*, the court noted that the declarant had been shot only fifteen or twenty minutes before making the statement, that he had not moved from the spot where he had fallen, that he had been alone until the arrival of police, that he was bleeding and moaning, and that the man named as his assailant lived in an adjacent apartment and could have returned at any time during the fifteen to twenty minutes interlude. These circumstances, stated the *Cooley* court, "demonstrate that [the decedent's] words constituted an 'excited utterance' which was not borne of design or reflection." (Footnote and emphasis omitted.) *Id.* at 42, 348 A.2d at 107.

When we turn to the facts of the instant appeal, it becomes clear that the victim's statement cannot be considered a part of the res gestae, spontaneous or excited utterance exception to the hearsay rule, and is therefore not admissible as such. The prosecution's own evidence showed that decedent's statement was made more than six hours after the occurrence, while the decedent was lying in a hospital bed, having been removed to the hospital from the scene of the crime in a police emergency patrol wagon. There is nothing in the record to indicate what, if any, conversation the victim had had with persons other than the investigating detective in that six-hour interim. Furthermore, the utterance was anything but spontaneous. Detective Culbreth testified that after receiving permission from the head nurse, he awakened the victim, identified himself, and "explained to him what information I had; that his condition was very bad, and that there was a chance that he would die, and that there were some facts of this case that we would have to know." In response to the detective's question-

ing the victim, speaking very softly, and apparently struggling to talk, identified, and briefly described the appellant. Although statements made following a lapse of time, *see Commonwealth v. Cooley*, 465 Pa. 35, 348 A. 2d 103 (1975) (15–20 minutes); *Commonwealth v. Banks*, 454 Pa. 401, 311 A.2d 576 (1974) (15–20 minutes); *Commonwealth v. Cheeks*, 423 Pa. 67, 223 A.2d 291 (1966) (45 minutes); or in response to questioning, *Commonwealth v. Cooley, supra; Commonwealth v. Banks, supra; Commonwealth v. Edwards*, 431 Pa. 44, 244 A.2d 683 (1968), have been held admissible as res gestae exceptions to the hearsay rule, as we stated in *Commonwealth v. Cooley, supra*, at 42, 348 A.2d at 107,

"in some instances the time lapse may be so long or the question and answer exchange so unhurried and reflective as to require a finding of non-spontaneity. . . ."

Such is the situation in the instant case, and the declaration is not admissible as a spontaneous utterance exception to the hearsay rule.

Turning now to the prosecution's argument that the declaration is admissible as a dying declaration, again we agree with appellant that it is not admissible under this exception to the hearsay rule. As stated in *Commonwealth v. Cooley*, supra at 42–43, 348 A.2d at 107,

"before an accusatory declaration may be admitted as a dying declaration, the evidence must demonstrate that at the time the statement was made death was imminent, that the declarant had a sense of impending death and that death did ensure."

On facts of the instant appeal, it is clear that the evidence has not shown that at the time he made the statement declarant was aware of his impending death, nor

does the evidence show that death was imminent. We have never held that simply because the declarant did in fact die is enough to make the statement into a "dying declaration" so as to be excepted from the hearsay rule.

As stated in *Commonwealth v. Smith*, 454 Pa. 515, 518, 314 A.2d 224, 225 (1973),

"before declarations of a deceased may be admitted as dying declarations, the evidence must, inter alia, justify the conclusion that at the time the statements were made, the declarant believed he was in fact dying, and also that death was imminent. In other words the admissibility of such evidence depends primarily upon the state of the declarant's mind."

Of course, the best evidence of the declarant's state of mind would be a direct statement by the victim as to his sense of impending death. Such was the case in *Commonwealth v. Gause*, 459 Pa. 594, 330 A.2d 856 (1975). In *Gause* we stated:

"The victim in this case was shot five times. One of the bullets penetrated his abdomen, perforating his liver, the right venal artery, and inferior vena cava. One hour after he was shot, he affirmatively indicated his belief that he was dying."

*Id.* at 598, 330 A.2d at 858.

Moreover, the sense of impending death may be inferred from the circumstances, such as the nature of declarant's wounds. *See Commonwealth v. Gause, supra; Commonwealth v. Cooley, supra.* The nature of the wound, and the pain and bleeding which may accompany it, can in certain circumstances establish the declarant's sense of impending death, and thus, justify admission of the statement under the dying declaration exception to the hearsay rule. Such circumstances were present in *Commonwealth v. Gause, supra,* as outlined in the above quo-

tation. Such circumstances were also present in *Commonwealth v. Cooley, supra,* where the court stated:

> "Here, the deceased was shot in the back and the bullet preceded through his lungs, his intestines and his abdomen."

*Id.* at 43, 348 A.2d at 107.

Contrasting the above cases to the facts and circumstances present in the instant appeal illustrates why the declaration here cannot be considered a dying declaration within that exception to the hearsay rule. In the present case there is no evidence that the declarant had any sense of impending death. The prosecution argues that the investigating detective's statement to the declarant that he (the declarant) was in bad shape and might not make it, is enough for us to justify an assumption that the declarant believed that he was about to die. This we decline to do. Nothing in declarant's statement indicates any sense of impending death, and furthermore, the evidence presented by the prosecution showed that the wounds that the decedent had suffered did not normally result in death. We conclude that the evidence in the present case fails to establish that the declarant was in fact dying, or that the declarant believed that his death was imminent at the time the statement was made. The statement in question is therefore not admissible as the "dying declaration" exception to the hearsay rule.

Judgment of sentence is reversed and a new trial granted.

JONES, C. J., and NIX, J., dissent.