423 A.2d 1247

**COMMONWEALTH of Pennsylvania**

v.

**Joseph LaROSA, Appellant.**

Superior Court of Pennsylvania.

Argued March 19, 1979.

Filed Dec. 29, 1980.

Petition for Allowance of Appeal Denied April 20, 1981.

Jeffrey Miller, Philadelphia, for appellant.

Thomas McGarrigle, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before CERCONE, President Judge, and WATKINS and HOFFMAN, JJ.

CERCONE, President Judge:

This is an appeal from a conviction for aggravated assault. The primary question presented is whether *Commonwealth v. Bennett*, 224 Pa.Super. 238, 303 A.2d 220 (1973) and its progeny preclude a finding of guilt beyond a reasonable doubt where the evidence of guilt adduced at trial consists mainly of the victim's out-of-court inculpatory "excited utterance," when at trial the victim cannot recall either making the statement or the accuracy of its content. The lower court reasoned that *Bennett* does not prevent a conviction for assault where the declarant's in-court testimony is found to be wholly incredible and where there is additional evidence presented which is probative of the accused's opportunity and motive for committing the assault. We agree.

At approximately seven o'clock in the morning on October 5, 1977, in Philadelphia, Pennsylvania, Edward Owens heard a knock at the door of his residence. Since Mr. Owens was unclothed, he went to the kitchen on his way to the bath-

room and shouted "come on in." Apparently within moments thereafter, Owens was stabbed in the upper portion of the left side of his chest. Debbie Monoghan, who at this time was present in another area of the Owens' household, came to Owens' aid upon hearing his pleas for help. Since there was no telephone in the Owens' house, Ms. Monoghan went to a fire station across the street in order to call for assistance. However, no more than 10 or 15 minutes elapsed between the stabbing and the arrival of the paramedics. Almost immediately thereafter, as two paramedics were placing Mr. Owens in the ambulance, Officer L. Thomas Szelagowski arrived on the scene.

Before questioning Mr. Owens, Officer Szelagowski observed that most of Owens' upper abdomen was covered with blood, indicating Owens had faced his assailant, and was informed that Owens' condition was serious. During Szelagowski's conversation with Owens, Owens is alleged to have unequivocally stated that the police should "get" Joseph LaRosa, a friend of Owens' because he was the perpetrator of the assault.

Later that same morning Officer Frank Mondrosch apprehended LaRosa who, after receiving the appropriate *Miranda* warnings, gave Mondrosch a statement. At trial Officer Mondrosch testified that LaRosa admitted having been in Owens' house earlier that morning, but denied having stabbed Owens. LaRosa had stated the purpose of his visit was to laugh at Owens, presumably tauntingly, for allegedly having attacked LaRosa's girlfriend, firing a gun at her on several occasions, and having threatened LaRosa. LaRosa also accused Owens somewhat incredibly, of being a "junkie" who sometimes kept girls bound in his house for several days so he could burglarize their homes. Obviously, to the extent that LaRosa's statement was credible it was partially exculpatory, containing as it did his denial of being Owens' assailant. On the other hand, his statement was inculpatory insofar as it placed LaRosa at the scene of the crime approximately at the time it was committed, and established a motive for LaRosa's assaulting Owens.

LaRosa was subsequently charged with and brought to trial for the crimes of simple assault,[1] aggravated assault,[2] and possession of instruments of crime.[3]  During LaRosa's non-jury trial, Owens' inculpatory statement to Officer Szelagowski was admitted over timely objection that it did not qualify as an "excited utterance."  At the conclusion of the trial, LaRosa was found guilty of only aggravated assault. Timely motions for new trial and in arrest of judgment having been filed, argued and denied by the lower court, this appeal ensued.

As mentioned above, appellant relies primarily upon *Commonwealth v. Bennett*, 224 Pa.Super. 238, 303 A.2d 220 (1973).  He maintains that a conviction is a matter of conjecture and cannot stand where the sole evidence of the accused's guilt consists of an inculpatory excited utterance of an assault victim, which utterance is later contradicted by the in-court statements of the victim-declarant.[4]  The Com-

1. Crimes Code, 18 Pa.C.S. § 2701 (1973).

2. Crimes Code, 18 Pa.C.S. § 2702 (1973).

3. Crimes Code, 18 Pa.C.S. § 907 (1973).

4. Appellant has apparently conceded that the Commonwealth is correct in its assertion that the Owens' statement qualified as an "excited utterance" and was, therefore, initially admissible as an exception to the hearsay rule.  See *Commonwealth v. Pronkoskie*, 477 Pa. 132, 383 A.2d 858 (1978); *Commonwealth v. Little*, 469 Pa. 83, 364 A.2d 915 (1976); *Commonwealth v. Cooley*, 465 Pa. 35, 348 A.2d 103 (1975); *Commonwealth v. Pettiford*, 265 Pa.Super. 466, 402 A.2d 532 (1979); *Commonwealth v. Gore*, 262 Pa.Super. 540, 396 A.2d 1302 (1979); *Commonwealth v. McIntosh*, 258 Pa.Super. 101, 392 A.2d 704 (1978); *Commonwealth v. Dugan*, 252 Pa.Super. 377, 381 A.2d 967 (1977).  We agree, and observe that in the absence of this concession our decision on the merits would be no different. The Commonwealth's trial proofs satisfied the applicable tests for admissibility of excited utterances.  See *Commonwealth v. Pronkoskie*, 477 Pa. at 136–139, 383 A.2d at 860–861; *Commonwealth v. Cooley*, 465 Pa. at 42, 348 A.2d at 107.  As such, Owens' statement came within the evidentiary rule that "[s]pontaneous exclamations or declarations uttered during or immediately preceding or following the actual infliction of wounds... are admissible as within the res gestae rule." *Commonwealth v. Noble*, 371 Pa. 138, 145, 80 A.2d 760, 763 (1952).  See also *Commonwealth v. Edwards*, 431 Pa. 44, 244 A.2d 683 (1968); *Commonwealth v. Stokes*, 409 Pa. 268, 186 A.2d 5 (1962); *Commonwealth v. Rumage*, 359 Pa. 483, 59 A.2d 65 (1948).

monwealth argues that Bennett is distinguishable and, therefore, does not control the disposition of this controversy. We find that there are several defects in appellant's argument and will affirm the judgment of sentence.

In the first place, Owens' excited utterance was not, as appellant contends, the only evidence linking appellant to the crime. As indicated above, appellant's statement to Officer Mondrosch at the time of his arrest established that appellant had gone to Owens' house on the morning of the stabbing to taunt Owens, and that appellant had a motive for committing the crime.[5] Motive and opportunity, while not always necessary to prove, are always relevant to establish the identity of the perpetrator of the crime. See generally 10A P.L.E., Criminal Law §§ 291, 401 (1970). Consequently, appellant's assertion that Owens' excited utterance was the only evidence tending to prove appellant was the assailant is simply a misstatement of the record.

Second, appellant's assertion that Owens' testimony at trial contradicted his excited utterance is also inaccurate. Although it is true that Owens was unable to testify at trial that appellant had stabbed him, despite his positive identification of appellant minutes after the crime, neither did Owens' testimony tend to exonerate appellant. In this regard, Owens testified as follows:

Cross Examination

Q.: Do you know Joseph LaRosa?

A.: Yes, I know him.

Q.: Did he stab you?

A.: No, sir, not that I know of.

Mr. Reif [defense counsel]: That is all. No questions.

The Court: What do you mean, sir, when you say, 'not that I know of'?

5. Additionally, although Owens' girlfriend did not identify appellant at the trial, she testified that she had been alerted by Owens' cries for help during the assault, and had seen a white male in the house who ordered her to return upstairs.

A.: I mean by saying that that I do not know who stabbed me.

Obviously, Owens did not contradict the substance of his excited utterance, he merely testified that he had no present recollection of whom his assailant had been. Consequently, Owens' testimony at trial did not weaken the probative force his excited utterance otherwise would have had standing alone. Cf., Annot., 99 A.L.R.3d 934.

■■■■ Having demonstrated the fallacy of the factual predicates upon which appellant's analogy of this case to *Bennett* rests, it is nevertheless necessary to determine whether the Commonwealth's evidence was sufficient to prove appellant's guilt beyond a reasonable doubt. In undertaking this task, we are mindful that it is the exclusive function of the trier of fact to assess the credibility of the witnesses; and the trial judge was free to believe some, none or all of the evidence presented by the Commonwealth or appellant. See, e. g., *Commonwealth v. Hinchcliffe*, 479 Pa. 551, 388 A.2d 1068 (1978); *Commonwealth v. Diggs*, 260 Pa.Super. 349, 394 A.2d 586 (1978). In receiving the evidence we must view it in the light most favorable to the verdict winner, herein the Commonwealth. *Commonwealth v. Jackson*, 481 Pa. 426, 392 A.2d 1366 (1978); *Commonwealth v. Gendrachi*, 256 Pa.Super. 68, 389 A.2d 604 (1978). Accepting as true all the evidence and the reasonable inferences arising therefrom, we must determine whether the probative force of such evidence and its inferences is sufficient to prove appellant's guilt beyond a reasonable doubt. *Commonwealth v. Riggins*, 478 Pa. 222, 386 A.2d 520 (1978); *Commonwealth v. Fassett*, 260 Pa.Super. 323, 394 A.2d 573 (1978). Having so evaluated the evidence, we conclude the Commonwealth has satisfied its burden of proof.

As noted above, appellant relies in large part upon the case of *Commonwealth v. Bennett*, 224 Pa.Super. 238, 303 A.2d 220 (1973). We find appellant's reliance on *Bennett* to be misplaced. In *Bennett* the accused had been found guilty

of receiving stolen goods, an automobile, and the Commonwealth's proof that the accused knew the car had been stolen rested almost entirely on the testimony of the person who had stolen it. The difficulty with this evidence was that the witness gave several accounts of how and when he had informed the accused that the car had been stolen, accounts which were wholly conflicting and contradictory such that selecting which account to believe was purely a matter of conjecture and surmise. Indeed, in one version, he denied ever having informed Ms. Bennett that the car had been stolen. Consequently, the verdict, based upon his testimony, was infirm and the judgment of sentence was reversed. *Id.*, 224 Pa.Super. at 239–40, 303 A.2d at 220–21. Cf. *Commonwealth v. Farquharson*, 467 Pa. 50, 354 A.2d 545 (1976); *Commonwealth v. Robinson*, 264 Pa.Super. 345, 399 A.2d 1084 (1979). Such was not the state of the evidence in this case, however.

As we took pains to establish earlier, Owens' testimony at trial did not contradict the substance of his excited utterance which, itself, was fortified by appellant's statement given to Officer Mondrosch at the time of his arrest. Furthermore, the trial judge had a perfectly sound basis for crediting the victim's excited utterance and Officer Mondrosch's testimony, while disregarding Owens' testimony of lapse of memory.[6] First, Owens admitted that appellant was his friend, a friendship Owens may have chosen to honor when his anger had cooled. Second, appellant's statement to Officer Mondrosch included allegations that Owens, himself, was a criminal who practiced burglary, as well as false imprisonment, to satisfy his drug addiction. This Damoclean threat offered an added inducement for Owens to discharge his duty in friendship by silence.

In any event, the inherent reliability of an excited utterance derives from the circumstances which provoked it,

6. The trial judge noted in his opinion that Owens' testimony may have been fabricated.

and its credibility does not depend upon its corroboration or restatement in court. See *Commonwealth v. Pronkoskie*, 477 Pa. 132, 383 A.2d 858 (1978); *Commonwealth v. Gore*, 262 Pa.Super. 540, 396 A.2d 1302 (1978). See also McCormick, Handbook of the Law of Evidence §§ ——, 290, 297 (2d ed. 1972 & Supp. 1978). If reaffirmation in court were required, res gestae statements of homicide victims would be of little use. But, see Annot., 4 A.L.R.3d 149. However, out-of-court exclamations made in the time sequence of an event as to be part of it are especially trustworthy, forged, as they are, under the stress of nervous excitement and, thus, unlikely to be tempered by reflection or fabrication. See VI Wigmore, Evidence § 1748 (3rd ed. 1940). Indeed, our Supreme Court has held that an uncorroborated dying declaration is sufficient, in and of itself, to prove the identity of the murderer beyond a reasonable doubt. *Commonwealth v. Riggins*, 478 Pa. 222, 386 A.2d 520 (1978). *A fortiori* Owens' excited utterance in this case, partially corroborated by appellant's statement to Officer Mondrosch, was sufficient to establish appellant's guilt for aggravated assault beyond a reasonable doubt.

Judgment of sentence affirmed.