J-A02014-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DEMETRIUS PIRL | : | |
| | : | |
| Appellant | : | No. 628 WDA 2018 |

Appeal from the Judgment of Sentence June 5, 2018
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0005797-2016

BEFORE:  SHOGAN, J., OLSON, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY SHOGAN, J.:                    FILED MARCH 30, 2020

Appellant, Demetrius Pirl, appeals from the June 5, 2018 judgment of sentence entered after a jury convicted him of attempted murder and aggravated assault.[1]  We affirm.

The trial court summarized the facts of the crimes as follows:

At trial, Allegheny County Police homicide detective Kevin L. McCune testified that he responded to investigate a shooting at 782 Camp Hollow Road, West Mifflin, Pennsylvania on May 1, 2016.  He noticed some articles of clothing and what . . . appeared to be a cell phone along with what appeared to be blood in the area. (N.T. p. 25)[.]  He also testified that a 9mm Glock pistol and (2) .45 caliber spent casings had been found in the yard by West Mifflin police officers.  (N.T. pp. 25–36)[.]

Jennifer Staley testified that she lived three doors away, at 790 Camp Hollow Road[,] and around 1:00 a.m. she heard several gunshots and called 9-1-1. (N.T. pp. 44–45)[.]

---

[1]  18 Pa.C.S. §§ 901(a), 2502(c), and 2702(a)(1), respectively.

The owner of 782 Camp Hollow Road[, Donald Steinert,] testified that he was awakened at 1:00 a.m. by his dog who was growling and barking. Mr. Steinert observed an unknown person laying in his backyard[,] and he proceeded outside. He observed a man, bleeding, either talking on a cell phone or trying to make a call. (N.T. p. 49)[.] He asked the man what he was doing in his yard and the man didn't have an answer. The man lying in the yard told Mr. Steinert his name and said he'd been shot. The man said Demetrius shot him, and Mr. Steinert asked[,] "Who?" [T]he man said[,] "Demetrius Pirl shot me." (N.T. p. 51)[.] The victim said his name was Duane Alston ("the Victim"), and West Mifflin police arrived a minute or two later. [The Victim] asked Mr. Steinert to call his girlfriend[,] and [Mr. Steinert] talked back and forth with [the Victim]. On cross examination, Mr. Steinert testified that [the Victim's] exact words were "I am dying. Demetrius shot me." When asked "Who?" [the Victim] responded[,] "Demetrius Pirl shot me." (N.T. p. 56)[.]

\* \* \*

The Commonwealth called West Mifflin [P]olice [O]fficer William Crousey, who responded to the scene at 1:00 a.m. [H]e observed the [V]ictim laying on the ground and heard him say[,] "Demetrius Pirl shot me." (N.T. p. 59)[.]

Tyler Scruggs, another West Mifflin [P]olice [O]fficer[,] arrived in response to a shots[-]fired dispatch. (N.T. 65)[.] He testified that he asked the [Victim] his name, and was told Duane Alston. [The Victim] said he was shot. The officer observed an entry wound in the back of the [V]ictim's head, and the entire right side of his face was swelled. [The Victim] was spitting out blood and teeth while trying to speak. The officer asked if he kn[e]w who shot him, and [the Victim] responded "little Meech." When asked if the person went by other names, [the Victim] told him[,] "Yes, Fat-Tay." The officer asked what his real name was[,] and [the Victim] told him Demetrius Pirl, several times. The officer asked whether it was Demetrius Pirl[,] Sr. or Demetrius Pirl, Jr., since there are two men with that name, and [the Victim] identified the man who shot him as Jr. The officer also testified that he discovered the Glock and two (2) spent .45 caliber casings seven[] to eight feet away from where [the Victim] was laying. (N.T. p. 65-60)[.]

[The V]ictim was called as a witness. He testified that he had been shot, but didn't remember anything about the shooting. (N.T. p. 70)[.] He remembered waking up in the hospital, but nothing about the night he was shot[.] (N.T. p. 78)[.]

Sergeant Rick Bandik[,] a West Mifflin [P]olice [O]fficer[,] testified that he responded to the scene, and that [the Victim] told him that Demetrius Pirl shot him. (N.T., p. 73)[.]

Jason Clark, a scientist with the Allegheny County Office of Medical Examiner, testified that he was unable to obtain any latent fingerprints for identification purposes from any exhibits, particularly the Glock firearm.

Allegheny County Police Homicide [D]etective Steven Hitchings testified that Demetrius Pirl[,] Jr. had the street names of "little Meech" and "Fat-tay." Detective Hitchings also testified that Demetrius Pirl, Sr. could not have been at the scene of the shooting, since Demetrius Pirl, Sr. was lodged in the Allegheny County Jail at the time. (N.T., pp. 80-82)[.]

Detective McCue was re-called to testify that after [Appellant's] arrest, [Appellant] agreed to make a statement. [Appellant] did not admit to shooting [the Victim], although he met with him earlier in the day. [Appellant] blamed Talisha Adams, for the shooting. (N.T. p. 91)[.]

The medical records of [the Victim] were also admitted into evidence, as Exhibit 14 . . . . (N.T. pp. 97-98)[.]

Trial Court Opinion, 5/3/19, at 3–5 (footnote omitted).

The jury convicted Appellant on December 7, 2017, of attempted murder and aggravated assault. On February 28, 2018, the trial court sentenced Appellant to fifteen to thirty years of imprisonment for attempted murder and determined that the aggravated assault conviction merged for purposes of sentencing. Appellant filed a timely post-sentence motion ("PSM") on Monday, March 12, 2018. The trial court held a hearing and ultimately

denied the PSM on May 11, 2018.[2]  Appellant filed a notice of appeal on May

2, 2018.[3]  Both Appellant and the trial court complied with Pa.R.A.P. 1925.

On June 5, 2018, the trial court corrected the sentencing order.

     We first consider whether the trial court had the authority to correct the

sentencing error[4] on June 5, 2018, after the notice of appeal was filed.  The

question of whether a trial court has the authority to correct an alleged

sentencing error poses a pure question of law.  Commonwealth v. Borrin,

_____

[2]  The order denying the PSM, although dated April 11, 2018, was not filed
until May 11, 2018.

[3]  The May 2, 2018 notice of appeal was filed while the PSM was pending,
thereby suggesting quashal of the appeal.  See Commonwealth v. Claffey,
80 A.3d 780, 783 (Pa. Super. 2013) (noting that appeal filed while timely
PSMs were pending may be premature); see also Pa.R.Crim.P. 720, cmt. ("No
direct appeal may be taken by a defendant while his or her post-sentence
motion is pending.").  Where a notice of appeal is filed while a timely PSM is
pending, the appeal will be quashed because the judgment of sentence has
not been made final by denial of the PSM.  Pa.R.Crim.P. 720, cmt.;
Commonwealth v. Borrero, 692 A.2d 158 (Pa. Super. 1997).

     Here, in the interest of judicial economy, the May 2, 2018 notice of
appeal, although prematurely filed, is considered timely filed.  See Pa.R.A.P.
905(a)(5) ("A notice of appeal filed after the announcement of a determination
but before the entry of an appealable order shall be treated as filed after such
entry and on the day thereof.").  Thus, the appeal, treated as if the notice was
filed on May 11, 2018, the day the PSM was denied, is considered timely filed.

[4]  The trial court corrected clerical errors in the original sentencing order on
March 6, 2018, (Appellant confined at "SCI Camp Hill," not "Allegheny County
Jail"); April 11, 2018, ("Costs are waived"); and June 5, 2018 (Count 1
"Criminal Attempt-Criminal Homicide," not "Murder of the Third Degree").
Only the June 5, 2018 Corrected Order of Sentence post-dates the filing of the
notice of appeal.

12 A.3d 466, 471 (Pa. Super. 2011) (en banc). As such, our scope of review is plenary, and our standard of review is de novo. Id.

This Court recently explained:

"Trial courts have the power to alter or modify a criminal sentence within thirty days after entry, if no appeal is taken." Commonwealth v. Quinlan, 433 Pa. Super. 111, 639 A.2d 1235, 1238 (1994), appeal dismissed as improvidently granted, 544 Pa. 183, 675 A.2d 711 (1996). See also 42 Pa.C.S.A. § 5505 (stating except as otherwise provided or prescribed by law, court upon notice to parties may modify or rescind any order within 30 days after its entry, notwithstanding prior termination of any term of court, if no appeal from such order has been taken or allowed). Nevertheless, once the thirty-day period expires, the trial court usually loses the power to alter its orders. Quinlan, supra. An exception to this general rule exists to correct "clear clerical errors." Borrin, supra at 471. "This exception to the general rule of Section 5505 cannot expand to swallow the rule." Commonwealth v. Holmes, 593 Pa. 601, 617, 933 A.2d 57, 66 (2007). Thus, the court's inherent authority to correct patent errors is a "limited judicial power." Id. at 618, 933 A.2d at 67.

"An alleged error must qualify as a clear clerical error (or a patent and obvious mistake) in order to be amenable to correction." Borrin, supra at 473.

Commonwealth v. Kremer, 206 A.3d 543, 548 (Pa. Super. 2019) (en banc) (emphasis added). Thus, while the intervening appeal appears to prevent the trial court's action, Kremer makes clear that the lower court may correct a clear clerical error.

We note that instantly, the June 5, 2018 sentence correction was not within thirty days of the April 11, 2018 sentence correction. However, it was within thirty days of the date the judgment of sentence became final, as we previously noted that the judgment of sentence became final upon the May

11, 2018 denial of the PSM.  Supra note 2.  Thus, we must ascertain whether the June 5, 2018 sentence correction was a "clear clerical error."  Kremer, 206 A.3d 543.

The sole correction of the June 5, 2018 Corrected Order of Sentence, related to the misstatement that the crime specified at Count 1 was "Murder of the Third Degree."  The June 5, 2018 Corrected Order of Sentence clarified that Count 1 was "Criminal Attempt-Criminal Homicide."  The Kremer Court underscored that "only when a trial court's intentions are clearly and unambiguously declared during the sentencing hearing can there be a 'clear clerical error' on the face of the record, and the signed sentencing order subject to later correction."  Kremer, 206 A.3d at 548.

There was never any ambiguity that Appellant did not face the charge of third degree murder.  The Victim herein did not die.  The criminal complaint charged attempted murder.  Complaint, 5/1/16.  The information charged attempted murder.  Information, 7/29/16.  The jury was instructed inter alia, on attempted murder.  N.T., 12/7/17, at 223.  The sentence imposed at the Sentencing Hearing was for attempted murder.  N.T. (Sentencing), 2/28/18, at 3–36.  There was no ambiguity in the sentencing transcript.  There are no "inconsistent inferences," and it is not "open to competing interpretations," the Kremer Court's hallmarks of ambiguity.  Kremer, 206 A.3d at 549.

Because the sentencing transcript displayed a clear clerical error, the June 5, 2018 Corrected Order of Sentence is proper.[5]

Appellant raises the following issues on appeal:

I. [Appellant] was denied due process and a fair trial when the trial court admitted, over objection, the statements made by the [V]ictim wherein he identified [Appellant] as the shooter, when those statements were clearly hearsay and did not fall under either a "dying declaration" or an "excited utterance" exception to the hearsay rule.

II. [Appellant] was denied due process and a fair trial when the trial court denied the defense request for a neurologist to review the [V]ictim's medical records and to provide expert testimony to explain whether the [V]ictim, who was shot in the back of the head, would have the mental capacity or ability to identify his shooter accurately at the time of the incident, but then later have no recollection of the event or of the shooter.

III. The convictions for attempted homicide and aggravated assault were not supported by sufficient evidence because the identity of the shooter was only established through inadmissible hearsay statements of the [V]ictim. In the absence of the hearsay statements, there was no evidence which established that [Appellant] was the shooter.

Appellant's Brief at 5.[6]

In his first issue, Appellant argues that the Victim's identification of Appellant as the person who shot him was impermissible hearsay, and the trial court's admission of the statements as either dying declarations or excited

_____

[5] We note our consternation that neither party nor the trial court mentioned, let alone discussed, the multiple sentencing corrections and their impact on the appealability of this case.

[6] The above issues are the identical issues raised in the Rule 1925(b) statement.

utterances was an abuse of discretion. Appellant's Brief at 18. Appellant maintains that the statements cannot be labeled as dying declarations because the Victim did not die. Id. at 20. Appellant also asserts that the statements are not excited utterances because they were made "upon reflection," Appellant "was speaking slowly rather than in a rushed, excited manner," and he "was talking calmly." Id. at 21–22. Based on the record before us, we discern no abuse of discretion in this regard.

Appellant filed a motion in limine on June 19, 2017, seeking to preclude the Victim's statements to three police officers and one civilian witness at the scene identifying Appellant as the person who shot him. N.T. (Motion in Limine, 7/19/17, at 3, 8. The Commonwealth filed a response on June 28, 2017, and the trial court held a hearing on the motion on July 19, 2017.

This issue concerns the admissibility of evidence. It is well settled that the admissibility of evidence lies within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. Commonwealth v. Bidwell, 195 A.3d 610, 616 (Pa. Super. 2018). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." Id. (citation omitted).

Hearsay is defined as an out-of-court statement offered for the truth of the matter asserted. Commonwealth v. Manivannan, 186 A.3d 472, 482

(Pa. Super. 2018) (citing Commonwealth v. Mosley, 114 A.3d 1072, 1084 (Pa. Super. 2015); Pa.R.E. 801 and 802). Hearsay is generally inadmissible unless it falls within an exception to the hearsay rule set forth in the Pennsylvania Rules of Evidence. Manivannan, 186 A.3d at 482.

The trial court concluded that the statements were admissible as either dying declarations or excited utterances. Trial Court Opinion, 8/6/18, at 5. "[A]n excited utterance is [a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Commonwealth v. Mollett, 5 A.3d 291, 310 (Pa. Super. 2010) (citing Pa.R.E. Rule 803(2)).[7]

> Pa.R.E. 803 provides, in pertinent part, as follows:
>
> Rule 803. Exceptions to the Rule Against Hearsay-- Regardless of Whether the Declarant Is Available as a Witness
>
> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> * * *
>
> (2) Excited Utterance. A statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused. . . .

Pa.R.E. 803(a)(2). The comment to the rule states, in pertinent part:

> This exception . . . requires an event or condition that is startling. . . . [A]n excited utterance (1) need not describe or explain the

---

[7] Due to our disposition that the statements were properly admitted as excited utterances, we need not evaluate whether they also were admissible as dying declarations.

startling event or condition; it need only relate to it, and (2) need not be made contemporaneously with, or immediately after, the startling event.  It is sufficient if the stress of excitement created by the startling event or condition persists as a substantial factor in provoking the utterance.

There is no set time interval following a startling event or condition after which an utterance relating to it will be ineligible for exception to the hearsay rule as an excited utterance.

Pa.R.E. 803(a)(2), cmt.  Regarding the relevant factors in determining whether a statement falls within the excited-utterance exception, this Court has identified the following:

A spontaneous declaration by a person whose mind has been suddenly made subject to an overpowering emotion caused by some unexpected and shocking occurrence, which that person has just participated in or closely witnessed, and made in reference to some phase of that occurrence which he perceived, and this declaration must be made so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective faculties.

Commonwealth v. Manley, 985 A.2d 256, 265 (Pa. Super. 2009) (some internal citations omitted) (citing Commonwealth v. Stallworth, 781 A.2d 110, 119-120 (Pa. 2001).  "It is important to note that none of these factors, except the requirement that the declarant have witnessed the startling event, is in itself dispositive.  Rather, the factors are to be considered in all the surrounding circumstances to determine whether a statement is an excited utterance."  Commonwealth v. Sanford, 580 A.2d 784, 788 (Pa. Super. 1990).

The circumstances surrounding the statements may be sufficient to establish the existence of a startling event.  Commonwealth v. Murray, 83

A.3d 137, 158 (Pa. 2013). As we described in Manley, an attempted murder-victim's statements set forth in a police report were admissible under the excited-utterance-hearsay exception, where the statements were made only a short time after being shot multiple times, the victim provided a description of his assailants, and the victim did so while bleeding from his gunshot wounds and awaiting transport to hospital. Manley, 985 A.2d at 266; see also Commonwealth v. Jones, 912 A.2d 268, 282 (Pa. 2006) (shooting victim's identification of the defendant as one of the shooters, made less than ten minutes after being shot, while the victim was bleeding from his gunshot wound and awaiting transport to the hospital, as well as second statement to police made approximately thirty minutes later, were admissible under the excited utterance exception to the hearsay rule). In Commonwealth v. Crosby, 791 A.2d 366 (Pa. Super. 2002), this Court stated, "The excited utterance exception includes statements made in response to questioning as well as those made shortly after the event, not just those made immediately thereafter." Id. at 370 (citations omitted).

In explaining its ruling on this issue, the trial court stated as follows:

Appellant first alleges the [c]ourt erred in allowing the statements of Duane Alston, the victim, which identified [Appellant] as his attacker, into evidence. These statements were made within minutes of having been shot in the head. At least four witnesses heard these statement[s]. None of these witnesses were leading the [V]ictim to identify [Appellant. The Victim] stated that he believed he was going to die. He attempted to make and asked several of the witnesses to help him call his girlfriend. Detective Hitchings testified that Mr. Pirl Sr. was housed in the Allegheny County Jail at the time[.]

- 11 -

* * *

One wonders whether there can be anything more startling or exciting than where, as here, the [Victim] was shot in the head. The [Victim] had a bullet hole in his head[,] and he related how it occurred. The [Victim] even said that he believed he was going to die. The statements made by [the Victim] were made extremely close in time to being shot.

The Court in Commonwealth v. Upshur, 764 A.2d 69 (Pa. Super. 2000)[,] discussed the hearsay exception of excited utterances.

In this case, the statement was made by [the Victim] as he was lying in a backyard at 1:00 a.m., literally minutes after he was shot in the head. See also Commonwealth v. Cooley, 348 A.2d 103, 106 (Pa. 1975). The claim that the hearsay exception of excited utterance does not apply is unfounded in this case.

Trial Court Opinion, 5/3/19, at 5–6.

The circumstances of the statement, the sheer magnitude of just being shot in the head, provides a context for the conclusion that the Victim experienced a startling event. Moreover, the fact that the Victim was speaking slowly or calmly as he lay on the ground after being shot is not dispositive. First, his demeanor may have resulted from the fact that he had been shot in the head. Second, "there is no requirement that the declarant be emotionally overpowered, but rather must be speaking under the stress of excitement. Packel & Poulin, Pennsylvania Evidence, § 803.2, p. 567." Sanford, 580 A.2d at 789. We will not reverse an evidentiary ruling by the trial court absent an abuse of the court's discretion. Murray, 83 A.3d at 158. Accordingly, we conclude there was no abuse of discretion in the trial court's conclusion that

the Victim's spontaneous identification of Appellant as his shooter were excited utterances and were properly admitted as exceptions to the prohibition on hearsay.

In his second issue, Appellant argues the trial court abused its discretion in denying a defense request for a neurologist to review the Victim's medical records. Appellant sought expert testimony to explain whether, in light of the Victim's injury, the Victim would have the ability to identify his shooter at the time of the incident but then later have no recollection of the event or the shooter. Appellant's Brief at 23, 25.

This issue is based upon the Victim's inability to recall being shot. While the Victim testified at trial, the whole of his testimony established only that he had no memory of the shooting, he remembered only waking up in the hospital, and he was hospitalized until "the end of May." N.T., 12/6/17, at 71. On December 4, 2017, the day trial was to begin, Appellant filed a Motion to Appoint a Neurologist, contending that he believed "that the victim may have stated incorrectly that [Appellant] shot him due to brain trauma as a result of the gunshot wound." Motion to Appoint a Neurologist, 12/4/17, at ¶4. Appellant further asserted that he contacted Dr. Arthur Kowell of Newport Beach, California, to review the medical evidence. Id. at ¶6. Appellant averred that "Dr. Kowell's hourly rate is $750.00 an hour. He estimates that his fee for reviewing the documents and providing a written report is $30,000.

If he is required to testify at trial, he estimates an additional fee of $22,500 plus expenses."  Id. at ¶7.

Our standard of review regarding the appointment of a defense expert in a criminal matter, is as follows:   "The provision of public funds to hire experts to assist in the defense against criminal charges is a decision vested in the sound discretion of the court[,] and a denial thereof will not be reversed absent an abuse of that discretion."  Commonwealth v. Cannon, 954 A.2d 1222, 1226 (Pa. Super. 2008) (quoting Commonwealth v. Albrecht, 720 A.2d 693, 707 (Pa. 1998)).  "An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will."  Commonwealth v. Murphy, 182 A.3d 1002, 1004–1005 (Pa. Super. 2018) (citation and internal quotation marks omitted).

> It is well established that indigent defendants have a right to access the same resources as non-indigent defendants in criminal proceedings.  The state has an affirmative duty to furnish indigent defendants the same protections accorded those financially able to obtain them.  Procedural due process guarantees that a defendant has the right to present competent evidence in his defense, and the state must ensure that an indigent defendant has fair opportunity to present his defense.

Commonwealth v. Konias, 136 A.3d 1014, 1019 (Pa. Super. 2016) (citations and quotation marks omitted).  However, "the Commonwealth is not obligated to pay for the services of an expert simply because a defendant requests one."  Id. at 1020-1021 (internal quotation marks omitted).  Rather,

"[t]here must be some showing as to the content and relevancy of the proposed expert testimony before such a request will be granted." Commonwealth v. Curnutte, 871 A.2d 839, 842 (Pa. Super. 2005).

The trial court set forth its reasons for denying the motion in its Pa.R.A.P. 1925(a) opinion, as follows:

> The court denied this request for several reasons. First, the motion did not provide any information on the professional qualifications of Dr. Kowall. Second, an estimated fee of more than $50,000.00, for an expert witness from California seemed excessive. Third, the defense appeared to be speculating that a neurologist would offer this type of testimony. Defense counsel offered no reasonable alternatives to this witness, nor was there any proffer that a neurologist would testify in that fashion. Most importantly, to allow an expert to substitute his or her opinion would intrude on the responsibility of the fact finder. See Commonwealth v. Crawford, 718 A.2d 768 (Pa. 1998). It is up to the jury to believe or disbelieve the victim. The [V]ictim identified his attacker to at least four separate witnesses. He remembered waking up in the hospital, weeks later, without any memory of the shooting. It is the fact-finder who should decide if [the Victim] was incorrect in his identification. Accordingly the court denied the Motion.

Trial Court Opinion, 5/3/19, at 7–8.

Appellant has failed to convince us that the trial court abused its discretion and that relief is due. The Victim's medical records were made available during pretrial discovery, and they were admitted as evidence at trial. N.T., 12/6/17, at 94–97. Generally speaking, expert testimony is admissible in Pennsylvania only when the expert's skill, experience, knowledge, and training will aid the factfinder in assessing a fact at issue. See Commonwealth v. Batts, 163 A.3d 410, 455–456 (Pa. 2017). In the

absence of information concerning the nature and scope of a proposed expert's testimony, we perceive no abuse of the trial court's discretion in denying Appellant's request. Moreover, the trial court's conclusion that the amount requested, $50,000, is exorbitant is reasonable. Appellant faults the trial court for not offering an alternative; rather, the trial court avers that Appellant wholly failed to provide a reasonable cost alternative.[8] We are constrained to point out that in his brief, Appellant fails to provide any possible basis regarding what evidence an expert would have provided beyond mere speculation. Thus, we discern no abuse of discretion in the trial court's denial of funds for an expert.

Lastly, we address Appellant's claim that the record lacks sufficient evidence supporting the convictions because "the identity of the shooter was only established through inadmissible hearsay statements of the [V]ictim."[9] Appellant's Brief at 26. Our standard of review when considering a challenge to the sufficiency of the evidence is well settled:

> A claim challenging the sufficiency of the evidence presents a question of law. We must determine "whether the evidence is sufficient to prove every element of the crime beyond a reasonable doubt." We "must view evidence in the light most favorable to the Commonwealth as the verdict winner, and accept as true all evidence and all

_____

[8] We note that Appellant has failed to provide notes of testimony from December 4, 2017.

[9] Appellant's issue is confined solely to this contention regarding identity. He does not contend that elements of the crimes were not proven.

reasonable inferences therefrom upon which, if believed, the fact finder properly could have based its verdict."

Our Supreme Court has instructed: The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

In addition, "the Commonwealth may sustain its burden by means of wholly circumstantial evidence, and we must evaluate the entire trial record and consider all evidence received against the defendant."

Commonwealth v. Green, 203 A.3d 250, 253 (Pa. Super. 2019) (quoting Commonwealth v. Orie, 88 A.3d 983, 1013–1014 (Pa. Super. 2014) (citation omitted)). This issue lacks merit.

We ruled supra that the Victim's statements, that Appellant was the person who shot him, to four different people as he lay wounded from a gun shot to the head, were excited utterances properly admitted as exceptions to the rule against hearsay. Thus, the premise to Appellant's claim, that his conviction is based on impermissible hearsay, is erroneous. Appellant's assertion that there was no other eyewitness testimony, Appellant's Brief at 27, nor fingerprints at the scene, id., is of no moment because our review is conducted in a light favorable to the Commonwealth as the verdict winner. Green, 203 A.3d at 253. The jury, as the finder of fact, was free to credit the

testimony of Mr. Steinert, Police Officer Crousey, Police Officer Scruggs and Sergeant Bandik, who all testified that the Victim identified Appellant as the shooter.  Id.  Appellant's sufficiency challenge has no merit.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/30/2020