392 A.2d 1366

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**William Michael JACKSON, Appellant.**

Supreme Court of Pennsylvania.

Submitted Sept. 22, 1978.

Decided Oct. 27, 1978.

Lester G. Nauhaus, Asst. Public Defender, Pittsburgh, for appellant.

Robert E. Colville, Dist. Atty., Robert L. Eberhardt, Charles W. Johns, Asst. Dist. Attys., Pittsburgh, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION

LARSEN, Justice.

Following a jury trial, appellant was convicted in the Court of Common Pleas of Allegheny County of murder in the first degree, robbery, aggravated assault and weapons offenses. Post-verdict motions were denied and appellant was sentenced to a term of life imprisonment to begin upon the expiration of the ten (10) to twenty (20) year sentence imposed for the other offenses. This direct appeal follows.

Appellant first argues that the evidence was insufficient to sustain a verdict of murder in the first degree. In reviewing the sufficiency of the evidence, we must consider the evidence and all reasonable inferences arising therefrom in the light most favorable to the Commonwealth as verdict winner. *Commonwealth v. Burton*, 450 Pa. 532, 301 A.2d 599 (1973). Viewed thusly, the evidence introduced at trial discloses the following.

At approximately 4:00 a. m., October 29, 1976, appellant and Donald Unger drove into a service station in Pittsburgh and asked Donald Wright, the attendant, to service their vehicle. As the attendant began to service the vehicle, appellant and Unger brandished firearms and ordered him (the attendant) and Norman Schohn, a customer, to enter the building and to lie face down on the floor.

After emptying the cash registers and starting to leave the unlit building appellant said to Unger, "He knows me," referring to the attendant, whereupon Unger and appellant reentered the darkened building. Unger shot the attendant in the back. Appellant fired five shots, striking the attendant in his left shoulder, and hitting the customer three times. All shots were fired at point-blank range while the victims were still lying face down on the concrete floor. The attendant was killed by the shots—the customer was permanently paralyzed from the waist down. The pathologist who conducted the autopsy testified that both wounds suffered by the attendant were contributing factors to his death, although the shoulder wound was the less severe of the two.

Appellant specifically argues that the Commonwealth failed to meet its burden of proving specific intent to kill, which intent must be demonstrated in order to sustain a verdict of first degree murder. 18 Pa.C.S. § 2502(a) (Supp. 1978–79). This argument is premised on our cases which have held that the use of a deadly weapon upon a vital part of the body raises a presumption sufficient to support an inference of the intent to kill. *See, e. g., Commonwealth v. O'Searo*, 466 Pa. 224, 352 A.2d 30 (1976). Appellant main-

tains that, since his shot struck the victim-attendant in the shoulder, which is not a vital organ, the shooting cannot raise the presumption of specific intent to kill, and that there was no other evidence offered to demonstrate specific intent. This contention would have us raise a presumption of *no* specific intent to kill where the weapon did not strike a vital organ. Such a presumption would clearly be inappropriate, and we have previously rejected this argument in *Commonwealth v. Padgett*, 465 Pa. 1, 348 A.2d 87 (1975). In *Padgett*, we stated:

> we are not persuaded that it must be shown that the bullet fired from a revolver, a deadly weapon, initially entered a vital organ before the inference of specific intent to kill can arise. The firing of a bullet *in the general area in which vital organs are located* can in and of itself be sufficient to prove specific intent to kill beyond a reasonable doubt. *Id.*, 465 Pa. at 5, 348 A.2d at 88. (emphasis added).

Appellant's statement to Unger ("He knows me"), followed by his shooting, in the dark, one shot at the attendant and three at the customer, and the bullet's striking the attendant only several inches away from a vital area, all reasonably support a specific intent to kill on the part of appellant. Therefore, the evidence is sufficient to sustain the verdict of murder of the first degree beyond a reasonable doubt.

Appellant next contends that the trial court abused its discretion in denying his motion to have the jury sequestered. The only reason asserted by counsel when the motion was made was "I thought in a capital case where the Commonwealth is going after the death penalty it is so serious that [it] would warrant sequestration." Pa.R.Crim. Pro. 1111(a) provides that a "trial judge may, *in his discretion,* order sequestration of trial jurors in the interests of justice." (emphasis added). This discretion is not abused unless the defendant makes a proper showing of potential prejudice to the court when the motion is made. *Commonwealth v. Bruno*, 466 Pa. 245, 257 n.5, 352 A.2d 40, 46 n.5 (1976). Such a showing must indicate that the case is the

subject of unusual or prejudicial publicity or that the jurors are subject to extraneous influences or pressures. *Commonwealth v. Gooslin*, 439 Pa. 170, 173, 266 A.2d 655, 657 (1970). Counsel's statement that the case was for a capital offense and that the Commonwealth sought the death penalty falls short of the requisite showing and, hence, the trial court did not abuse its discretion by denying the sequestration motion.

The next issue raised by this appeal alleges that the trial judge erred in refusing to individually poll the jurors upon request of counsel during trial. On April 14, 1977, appellant's counsel informed the court that two media items [1] had appeared the previous night which discussed Unger's separate trial in which he pled guilty and was convicted of first degree murder. According to counsel,[2] the items stated that Unger recounted a statement of the appellant that "He knows me, its now or never" or "words to that effect" (Notes of Testimony 337). Because of these allegedly prejudicial items, the request to poll the jury was made.

In response to the request, the prosecutor objected stating he intended to introduce witnesses who would offer the statements contained in the media items into testimony and, therefore, appellant would not be prejudiced by media accounts of information that would be brought out at trial. The trial court, on the basis of this offer, refused to poll the jury and the trial proceeded. However, several times during trial, the court reminded the jury that the case must be decided only upon the evidence presented in court and cautioned them against allowing themselves to be influenced by external sources.

During trial, a police officer testified that appellant told him that he (appellant) said to Unger "It's now or never," referring to the initial decision to rob the station. This

[1]. These were a *Pittsburgh Press* article and a local television newscast story.

[2]. Counsel never presented the court with a copy of the article nor a transcript of the newscast story, nor does he attach these items to his brief before us. *See Commonwealth v. Casper*, 481 Pa. 143, 155 n.13, 392 A.2d 287, 293 n.13 (1978).

statement also admitted to saying "He knows me" to Unger as he and appellant were starting to leave. No further objections nor requests to poll the jury were ever made during trial. Appellant now suggests that the media accounts "connected the two statements ["He knows me" and "it's now or never"] out of context," and that the result was a highly prejudicial implication that [appellant] suggested shooting the two men in a premeditated fashion. We cannot agree.

Substantially the same information came out at trial as was allegedly contained in the media items. Any effect on the jury caused by the difference between the two statements "He knows me—it's now or never," and the statement "He knows me" is inconsequential. The impact on the jury is the same—appellant was recognized and took steps to prevent this recognition from resulting in his arrest or capture, i. e. he shot the victim—witnesses.

Moreover, counsel merely alerted the trial judge that words "to the effect" of "He knows me—it's now or never" appeared in the media items. *Words to that effect* certainly were introduced at trial by the Commonwealth. Counsel never presented the specific media items to the judge for consideration, nor did he make additional requests to poll the jury after the *words to that effect* were introduced. Under these circumstances, the court's refusal to poll the jury was not erroneous.

*Commonwealth v. Bruno,* 466 Pa. 245, 352 A.2d 40 (1976) relied upon by appellant to support this allegation of error, is inapposite. *Bruno* held:

> The preferred procedure when highly prejudicial material is publicized during the trial and the jury is not sequestered is to question the jurors individually, out of the presence of other jurors. (cites omitted) However, questioning jurors as a group or giving special precautionary instructions may be a sufficient precaution depending upon the facts of the particular case. (cites omitted) Here, because the trial court took *none of these precautionary measures,* there is a strong possibility that "inher-

ently prejudicial" news articles publicizing appellant's suppressed confession reached the jury. (emphasis added) *Id.*

In *Bruno*, the media coverage of the trial was extensive (at least seven articles, some front page, and a local radio program), the nature of the coverage was highly inflammatory (the coverage referred to the suppression of an *inadmissible* confession, which confession implied that the murders involved were executions and involved occult goings-on; they also referred to certain other evidence not introduced at trial, such as allegedly "grisly" slides of the victim's corpses), defendant's counsel made *repeated* motions to have the jury polled, and the trial judge there gave ambiguous cautionary instructions to the jury (he only "suggested" that they occupy their time by reading a book at night, instead of the newspaper or watching television). The circumstances of the instant case fall far short of creating the danger of prejudice to appellant that was present in *Bruno*.

Appellant's fourth contention is that the trial court erred in refusing to charge the jury that "opinion evidence is the lowest form of evidence." In *Commonwealth v. Thomas*, 448 Pa. 42, 292 A.2d 352 (1972) we held that a litigant is entitled to a "low grade charge" on opinion evidence, where the expert's opinion is either in response to a hypothetical or is in contradiction to direct evidence. The expert opinion which appellant sought to undermine was that of the pathologist who conducted the autopsy. The pathologist testified both bullet wounds were factors in causing the attendant's death. The pathologist's opinion was based upon personal observation and there was no direct evidence in conflict with it. Therefore, the court did not err in refusing to give a "low grade charge" to the expert opinion in this case.

Appellant lastly contends that the medical testimony was defective and that his requested point for charge on opinion evidence should have alerted the judge to this allegedly defective medical testimony. This contention is without merit. We have held, in *Commonwealth v. Mason*,

474 Pa. 308, 378 A.2d 807 (1977) that ".  .  .  a party whose requested point, although erroneous, alerts the trial judge to an important issue in the case, does have just cause for complaint if the law to which that point pertains is not otherwise correctly stated in the charge." However, this rule is inapplicable where the requested charge is too general to alert the judge to a totally unrelated aspect of that case. Here, the requested "low grade charge" on opinion evidence would hardly alert the trial judge to an alleged inconsistency in the expert's testimony.

Judgment of sentence affirmed.

EAGEN, C. J., and O'BRIEN and NIX, JJ., concur in the result.

ROBERTS and MANDERINO, JJ., dissent.