J-S20034-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AVERY MICHAEL NASCIMENTO | : | |
| | : | |
| Appellant | : | No. 2569 EDA 2022 |

Appeal from the Judgment of Sentence Entered September 20, 2022
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0001096-2022

BEFORE: DUBOW, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                  **FILED JULY 31, 2023**

Appellant, Avery Michael Nascimento, appeals from the judgment of sentence of 10 to 20 years' incarceration imposed on him after he was convicted by a jury of attempted murder with serious bodily injury and aggravated assault.[1] For the reasons set forth below, we affirm.

In the early morning hours of January 23, 2022, Appellant shot and injured his girlfriend (Victim) and fatally shot her former boyfriend (Decedent). Appellant was charged with first-degree murder and third-degree murder for the shooting of Decedent, attempted murder with serious bodily injury and aggravated assault for shooting Victim, and possession of an instrument of

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 901(a), 2502(a), and 1102(c), and 2702(a)(1), respectively.

crime. These charges were tried to a jury from July 11 to July 13, 2022. At trial, nine witnesses testified for the Commonwealth: Victim, six police officers and detectives who investigated the case, and two medical witnesses. Appellant testified in his own defense and two character witnesses testified on his behalf.

Victim testified that Appellant was at her house on the night of January 22 to 23, 2022 and that Appellant began pushing her and throwing her into things when she would not let him look at her cell phone. N.T. Trial, 7/11/22, at 68-72. She testified that later in this fight, Appellant grabbed her by the hair, hit her in the head with a gun, choked her, and said to her, "Tonight's the night you're going to die, bitch." *Id.* at 74-75, 77-79. Victim testified Appellant took the phone from her, that Decedent called her, that Appellant picked up the call and argued with Decedent, and that after Appellant hung up, Decedent came to her house. *Id.* at 80-81, 83-88. She testified that Appellant and Decedent sat down and talked at first, but later began hitting and punching each other. *Id.* at 88-97. Victim testified that Decedent wound up on top of Appellant and that Appellant pulled out his gun and shot Decedent twice while they were wrestling each other on the floor. *Id.* at 97-103, 161-65. Victim testified that she ran out of the house to the house next door and that while she was on the neighbor's porch pounding on the door, Appellant came up to her with the gun and shot her in the hand. *Id.* at 102-05. She testified that she said to him, "Avery, stop" and "Why are you doing this?" and

that he responded "Shut up, bitch" and kept coming toward her and pointing the gun at her. *Id.* at 105. Victim testified that she attempted to hide under furniture on the porch, that Appellant tried to move the furniture away to get a better view of her and shot her again in her right thigh, and that this bullet lodged in her thigh and is still in her thigh. *Id.* at 105-06, 113. Victim testified that after Appellant shot her the second time, she played dead and that Appellant shot her a third time, grazing her buttock, and left. *Id.* at 105-08, 114.

One of the detectives who investigated the scene of the shootings testified that two fired bullets were found on the neighbor's porch under the porch furniture, one of which had human tissue and bone on it and the other of which had human tissue on it. N.T. Trial, 7/12/22, at 38-42, 49-50. He testified that live rounds were found on the sidewalk in front of the neighbor's porch where a shooter firing at the porch would have been standing and that this indicated that the gun had jammed and the shooter had to eject those live rounds in order to be able to shoot again. *Id.* at 16, 42-44, 51-52; Commonwealth Ex. 64. A firearms expert also testified that the presence of live rounds among fired cartridge casings shows that the firearm had malfunctioned and the shooter had ejected live rounds to keep shooting. N.T. Trial, 7/12/22, at 136, 139.

The physician who treated Victim's injuries testified that Victim had gunshot wounds to her right thigh and right hand and abrasions on her

buttocks. N.T. Trial, 7/12/22, at 68-72, 85-86. This physician testified that the hand wound was a significant injury that required hospitalization and treatment by a hand surgeon and that a gunshot to the thigh can be life threatening, but that Victim's thigh wound was not because the bullet did not hit any major blood vessels. *Id.* at 70-76, 83. The pathologist who performed the autopsy on Decedent testified that Decedent had three gunshot wounds, one from a bullet that entered the left side of the chest, went through the left lung and heart, exited from the front of the chest and lodged in the right arm, one from a bullet that entered the front pelvic area and lodged in pelvic bone, and one from a bullet that entered the back of the neck and exited on the left side of the neck. *Id.* at 153, 155-61. The pathologist testified that the chest wound had darkened area around the entry point that showed that the gun was against Decedent's body when it was fired, but that he found no gunpowder or stippling on the other two wounds that would be present if those shot were fired within three feet of Decedent. *Id.* at 157-58, 161-62, 164-65. The pathologist testified that each of the three gunshot wounds was sufficient by itself to cause Decedent's death. *Id.* at 166, 168-73.

Appellant testified that on the night of January 22 to 23, 2022, he and Victim argued about her phone, that Victim slapped and kicked him, and that he pushed her in response. N.T. Trial, 7/12/22, at 263-65, 267-75. Appellant denied that he choked Victim when they were arguing and fighting and denied that he grabbed her by the hair or hit her with his gun. *Id.* at 280-81, 287-

88. He testified that Decedent called Victim's phone while he and Victim were arguing, that he picked up the call, and that Decedent told him to "stop playing with" him and that Victim was Decedent's "bitch." *Id.* at 277-78. Appellant testified that after he hung up the phone, Decedent arrived at the house and pounded on the door. *Id.* at 278, 281-82. He testified that Victim let Decedent in, that he and Decedent argued, and that Decedent, who smelled of alcohol, became angry and started hitting him. *Id.* at 282-92. Appellant testified that Decedent knocked him down and landed on top of him, that Decedent tried to get Appellant's gun and that two shots went off during the struggle for the gun, the second of which hit Victim in the hand. *Id.* at 291-93. Appellant testified that Decedent continued attacking him and that he thought Decedent would kill him and shot Decedent in the pelvis. *Id.* at 293-94. He testified that he tried to get away, but Decedent was still fighting him and trying to get the gun, and that he accidently shot Decedent again while Decedent was grabbing him. *Id.* at 294, 315, 320-21 335-36. Appellant testified that he got away after Decedent rolled on his side vomiting, that he ran out of the house to the neighbor's house, and that when he saw Victim jump up from underneath furniture on the neighbor's porch, he shot at her once and ran away. *Id.* at 294-95, 323.

On July 13, 2022, the jury convicted Appellant of attempted murder with serious bodily injury and aggravated assault and acquitted Appellant of first-degree murder, third-degree murder, voluntary manslaughter (on which the

jury was also charged), and possession of an instrument of crime. N.T. Trial, 7/13/22, at 141-43. On September 20, 2022, the trial court sentenced Appellant to 10 to 20 years' incarceration for attempted murder and imposed no sentence for the aggravated assault conviction on the grounds that that charge merged with the attempted murder conviction. N.T. Sentencing at 12, 45; Disposition-Sentencing Order at 2. This timely appeal followed.

Appellant raises the following single issue in this appeal:

> Whether there was sufficient evidence presented at trial to sustain Appellant's conviction for attempted first-degree murder where he shot the victim in non-vital parts of her body from a very close range and the circumstances surrounding the shooting do not allow for an inference that he had the requisite intent to kill?

Appellant's Brief at 4. Our standard of review in a challenge to the sufficiency of the evidence is well-settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Tucker*, 143 A.3d 955, 964 (Pa. Super. 2016) (quoting *Commonwealth v. Hansley*, 24 A.3d 410 (Pa. Super. 2011)) (brackets omitted).

A conviction for attempted murder requires the Commonwealth to prove beyond a reasonable doubt two elements: 1) that the defendant had the specific intent to kill and 2) that he took a substantial step towards that goal. *Commonwealth v. Blakeney*, 946 A.2d 645, 652 (Pa. 2008); *Commonwealth v. Ligon*, 206 A.3d 515, 519 (Pa. Super. 2019); *Commonwealth v. Predmore*, 199 A.3d 925, 929 (Pa. Super. 2018) (*en banc*). The only element of the offense of attempted murder that Appellant argues that the evidence was insufficient to prove is the *mens rea* of specific intent to kill. Specific intent to kill may be proven from circumstantial evidence alone. *Commonwealth v. Cannavo*, 199 A.3d 1282, 1292 (Pa. Super. 2018); *Tucker*, 143 A.3d at 964; *Commonwealth v. Jackson*, 955 A.2d 441, 444 (Pa. Super. 2008).

Here, the evidence showed that Appellant hunted Victim down, walked up to her, and fired his gun directly at her three times from only a few feet away, hitting her in the hand, thigh, and buttock. N.T. Trial, 7/11/22, at 104-08, 110. That evidence was sufficient to satisfy the Commonwealth's burden of proof. Aiming a gun directly at a person and firing multiple shots at close range is sufficient to prove specific intent to kill. *Commonwealth v. Holt*, 273 A.3d 514, 529-30 (Pa. 2022). Appellant's argument that this evidence

was insufficient because his bullets did not hit a vital part of Victim's body is without merit. The fact that Appellant did not succeed in hitting Victim in the chest or head does not make the evidence that he pointed a gun directly at Victim and fired at her three times insufficient to show intent to kill. *Commonwealth v. Jackson*, 392 A.2d 1366, 1368-69 (Pa. 1978) (specific intent to kill shown where defendant fired a gun at victim in the dark hitting him in the shoulder); *Tucker*, 143 A.3d at 964-65 (evidence of specific intent to kill sufficient where defendant fired three shots at victim and only shot that hit victim struck him in the thigh); *Commonwealth v. Wyche*, 467 A.2d 636, 637 (Pa. Super. 1983) (specific intent to kill shown where defendant fired a gun at the victim multiple times, hitting him in the thigh, hand, and buttock).

Evidence that the defendant shot the victim in the lower legs is insufficient by itself to prove specific intent to kill where there was no obstruction or distance that could have adversely affected the defendant's aim. *Predmore*, 199 A.3d at 931-34. That situation, however, is not present here for two reasons. First, the evidence at trial showed that Appellant's ability to shoot Victim was obstructed when he fired the second and third shots because Victim attempted to protect herself by getting under porch furniture. N.T. Trial, 7/11/22, at 105-06. Second, unlike the lower legs, the places where Victim was shot, the hand, thigh, and buttock, are not far from vital areas of her body. *Commonwealth v. Padgett*, 348 A.2d 87, 88 (Pa. 1975) (shot to victim's arm was "in the general area in which vital organs are

located" and by itself was sufficient to prove specific intent to kill); **Wyche**, 467 A.2d at 637.

Moreover, there was other evidence in this case that supported an inference that Appellant acted with specific intent to kill Victim. Appellant made efforts to shoot Victim beyond merely firing the gun in her direction. Victim testified that when she asked Appellant to stop after he shot her in the hand, he replied "Shut up, bitch" and kept coming toward her pointing the gun at her and that when she hid under porch furniture, Appellant tried to move the furniture out of the way to get a better shot at her. N.T. Trial, 7/11/22, at 104-06. There was also evidence from the live rounds found at the scene, that Appellant had to eject cartridges from the gun to continue shooting at Victim. N.T. Trial, 7/12/22, at 16, 42-44, 51-52, 136, 139; Commonwealth Ex. 64. In addition, Victim testified that Appellant did not leave the scene until she played dead and that when she and Appellant were fighting earlier that night, Appellant said "Tonight's the night you're going to die, bitch." N.T. Trial, 7/11/22, at 75, 105-08. Indeed, Appellant admitted that he felt disrespected by Victim on the night that he shot her. N.T. Trial, 7/12/22, at 274-75, 302-05.

Because the evidence was sufficient to prove that Appellant acted with specific intent to kill Victim when he shot her, the Commonwealth satisfied its burden of proving the elements of attempted murder. Appellant's sole issue

in this appeal therefore fails. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/31/2023