J-S15036-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| EMERSON PAUL LOUIS SEGER | : | No. 1425 MDA 2022 |

Appeal from the Order Entered September 29, 2022
In the Court of Common Pleas of Franklin County
Criminal Division at No(s): CP-28-CR-0001016-2020

BEFORE: BOWES, J., STABILE, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.: **FILED: OCTOBER 30, 2023**

The Commonwealth appeals from the order which: (1) granted, in part, the post-sentence motion filed by Emerson Paul Louis Seger ("Seger"); (2) dismissed his conviction for attempted murder; and (3) vacated his judgment of sentence. We affirm.

The trial court summarized the relevant trial evidence as follows:

On May 7, 2020, . . . four individuals arrived at Frislet Joseph's [("Joseph")] home [at 142 Lincoln Way West in Chambersburg] around 11:58 p.m. Angela Lawyer, a neighbor, called the police after she heard arguing and looked out her window to see two men with machetes and one man with a gun. N.T.[,] 4/5/[]22, [at] 47. She saw a man wearing a black jacket with white sleeves point a gun at a window of [Joseph's] home and then heard three shots. *Id*. at 47-49. [Joseph] also called 911 where he screamed "home invasion" repeatedly. *Id*. at 153.

Detective James Iverson testified that the Chambersburg Borough has a camera system that law enforcement used to investigate the incident. On the video, individuals can be seen leaving 31 North Franklin Street. Four individuals can be seen standing outside [Joseph's] home. A man in a black jacket with

white sleeves points a firearm at one of the windows and pulls the trigger. N.T.[,] 4/6/[]22, [at] 23. After the incident, two individuals went back inside the home located at 31 North Franklin Street. The other two individuals did not go into the home and continued on foot away from the scene. N.T.[,] 4/5/[]22, [at] 134.

Detective Iverson was on call that evening. His sergeant informed him that an individual known as John Foreus may have been involved. *Id*. at 136. Detective Iverson learned that the individuals were observed running and heading to the area of North Franklin Street. Law enforcement created a perimeter around the residence. *Id*. at 138-[]39. Detective Iverson was notified that Mr. Foreus had exited the home. *Id*. Once he was apprehended, Mr. Foreus was transported back to the police department so that he could be interviewed. *Id*. Detective Iverson requested a warrant for 31 North Franklin Street. He learned that Maria Manzo, who owned the home, was in a relationship with Mr. Foreus. *Id*. at 141. Law enforcement did not find the machetes or the gun in Ms. Manzo's home.

Mr. Foreus identified the other individuals as Dormsley Audath, Jeffrey Leandre, and "King." [N.T.,] 4/4/[]22, [at] 46. [Seger] was later identified as "King" by using his driver's license photo. Mr. Foreus explained to law enforcement that he knew [Joseph] and, at one point in time, they were friends. *Id*. He went to [Joseph's] house because [Joseph] approached his wife and said, "your pussy husband needs to come because I have something for him." *Id*. at 57. Mr. Foreus went to talk to [Joseph,] but [Joseph] would not allow him in the home. [Mr. Foreus] then contacted Mr. Audath, Mr. Leandre, and [Seger] who then arrived at [Joseph's] home. *Id*. Mr. Audath and Mr. Leandre brought machetes, that Mr. Foreus took from them. *Id*. at 56. Mr. Foreus testified that [Seger] kicked [Joseph's] door and then[, as the assailants were running away, Seger] fired a gun three times [into a window]. *Id*. at 58. . . . Mr. Foreus did not know what type of gun [Seger] used. He described the gun as having "the little wheel that pops out and you load it up and it kind of spins." [*Id*. at] 59. No shell casings were found at the scene which lead [sic] law enforcement to believe that a revolver was used. N.T.[,] 4/5/[]22, [at] 126-[]27.

Detective Todd Hardin located a Chevy Malibu near the corner of Lincoln Way and North Franklin Street in a parking lot

that belonged to the Salvation Army. [*Id*. at] 111. An empty gun holster was on the passenger seat. *Id*. Detective Hardin identified this as the type of holster that would be used with a revolver. *Id*. He ran the license plate and learned that the vehicle was registered to Nelson Destinville. *Id*. at 111. Mr. Destinville's name is on the registration[,] but a woman described as "Fabiola" owned the vehicle. *Id*. at 144. "Fabiola" was identified as Esthere Raphael, [Seger's] paramour. *Id*. at 150. [Seger] was also known to drive the vehicle. Law enforcement obtained a search warrant for the vehicle and found the gun holster, various rounds of ammunition, and [Seger's] Indiana driver's license. *Id*. at 150. Mr. Leandre revealed that he saw [Seger] park his car in the Salvation Army parking lot on the night of the incident. *Id*. at 38.

[Seger] was not apprehended on May 7, 2020. Detective Iversen received a Crime Watch tip that [Seger] left the area and returned to Indiana. [N.T.,] 4/6/[]22, [at] 9. Detective Iversen received information from Indiana Trooper Beam who saw [Seger]. *Id*. Over a week after the incident, [Seger] was arrested in Indiana and brought back to Pennsylvania. [Seger's] jury trial [took place in] April [] 2022.

The jury found [Seger] guilty of one count of conspiracy to commit burglary, one count of aggravated assault, three counts of discharging of a firearm into occupied structure, one count of recklessly endangering another person, and one count of attempted murder. Th[e trial] court sentenced [Seger] to an aggregate of 84 to 264 months of incarceration at a state correctional institution on June 15, 2022. [Seger] filed a post-sentence motion [in which he argued, *inter alia*, that the Commonwealth produced insufficient evidence to support his conviction for attempted murder]. After the Commonwealth filed a continuance, a hearing to address [Seger's] post-sentence motion was scheduled for August . . . 2022. After the hearing, the court allowed defense counsel to file an amended post-sentence motion and brief. [Seger] filed his amended post-sentence motion [i]n August . . . 2022. [On September 29, 2022, the trial court entered an order granting, in part, and denying, in part, Seger's post-sentence motion. The trial court determined that the evidence was insufficient to support a conviction for attempted murder. The trial court then dismissed the charge for attempted murder, vacated Seger's judgment of sentence, and scheduled a resentencing hearing.]

Trial Court Opinion, 9/29/22, at 2-5 (unnecessary capitalization omitted).[1]

The Commonwealth filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.[2]

The Commonwealth raises the following issue for our review: "[w]hether the lower court erred when it granted [Seger's] post-sentence motion that there was insufficient evidence to support [Seger's] conviction for attempted murder?" Commonwealth's Brief at 4.

Questions of evidentiary sufficiency present questions of law; thus, our standard of review is *de novo* and our scope of review is plenary. **See Commonwealth v. Sanford**, 863 A.2d 428, 431 (Pa. 2004). When conducting a sufficiency review:

> [W]e evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. [T]he facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence. Any doubt about the defendant's guilt is

---

[1] The Commonwealth filed its notice of appeal prior to the resentencing hearing; consequently, the trial court cancelled the resentencing hearing pending resolution of this appeal.

[2] We note with disapproval that the trial court did not author a Rule 1925(a) opinion or a letter to this Court indicating the place in the record where an explanation may be found for its order granting, in part, Seger's post-sentence motion. **See** Pa.R.A.P. 1925(a)(1). Nevertheless, we have located the trial court's opinion, filed simultaneously with its order granting, in part, Seger's post-sentence motion, which states the reasons for its order.

to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Franklin*, 69 A.3d 719, 722 (Pa. Super. 2013) (citations and quotation marks omitted). In conducting our review, we consider all evidence actually admitted at trial and do not review a diminished record. *Commonwealth v. Smith*, 568 A.2d 600, 603 (Pa. 1989).

"A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S.A. § 901(a). "Criminal attempt to murder is defined by reading the attempt statute, 18 Pa.C.S.A. § 901(a), in conjunction with the [first-degree] murder statute, 18 Pa.C.S.A. § 2502(a)." *Commonwealth v. Anderson*, 650 A.2d 20, 23 (Pa. 1994).[3] Thus, a "conviction for attempted murder requires the Commonwealth to prove beyond a reasonable doubt that the defendant had the specific intent to kill and took a substantial step towards that goal." *Commonwealth v. Blakeney*, 946 A.2d 645, 652 (Pa. 2008). In sum, attempted murder is composed of two primary elements: (1) the *mens rea* element, which is the specific intent to kill (which is identical to the *mens rea* element of murder in the first degree); and (2) the *actus reus* element, which is the commission of

_____

[3] Attempted murder is, by definition, attempted first-degree murder. *See Commonwealth v. Griffin*, 456 A.2d 171, 177 (Pa. Super. 1983). Thus, the crimes of attempted murder in the second degree and attempted murder in the third degree do not exist. *Id*.

one or more acts which collectively constitute a substantial step toward the commission of a killing. *See Commonwealth v. Predmore*, 199 A.3d 925, 929 (Pa. Super. 2018) (*en banc*).

The Commonwealth contends that the trial court erred in granting Seger's post-sentence motion insofar as it related to the insufficiency of the evidence supporting his conviction for attempted murder. The Commonwealth initially challenges the trial court's observation that none of the co-conspirators testified that Seger had any personal issue with Joseph or that Seger had a specific intent to kill Joseph. The Commonwealth asserts that no such testimony was required to establish that Seger acted with the requisite intent when he fired three shots into the window of the residence in which Joseph was located. The Commonwealth claims that the only reason that Seger was in the area was because Foreus called him, and Foreus had a disagreement with Joseph earlier that day. According to the Commonwealth, "[i]t is reasonable for the jury to conclude that Seger arrived at the residence with the intent to handle the disagreement between Foreus and Joseph." Commonwealth's Brief at 21. The Commonwealth next argues that the trial court incorrectly concluded that there was no evidence that Seger fired his gun at Joseph. Although the Commonwealth concedes that there was no testimony regarding Joseph's actual location, it nevertheless argues that Foreus stated that Joseph was speaking on the other side of the front door. The Commonwealth asserts that it presented video which showed that Seger

moved from the door of the apartment to the window located to the left of the front door and then fired rounds into the window toward the direction of the door. The Commonwealth claims that this "evidence showed that Seger fired the gun in the direction of where he believed [Joseph] to be." *Id*. at 22. The Commonwealth further argues that the bullet strike on the stove indicates that shots were fired at a height intended to strike a person, rather than at a floor or ceiling.

The trial court considered the Commonwealth's issue and concluded that it lacked merit. The court reasoned:

> The Commonwealth failed to demonstrate how that [Seger] had the specific intent to kill. . . .
>
> The courts have long upheld that the Commonwealth may sufficiently prove the *mens rea* element for attempted murder by looking at the circumstances that demonstrate a defendant's intent to kill. These circumstances can range from a variety of situations. The courts have upheld an attempted murder conviction where a defendant shot at a man while he was sitting in his car, but suffered no injury[, when] . . . the defendant's statements at the scene along with other evidence of a long[-]standing feud created sufficient evidence to establish the requisite intent to support an attempted murder conviction. The Commonwealth noted in it[s] sentencing memorandum that "[Seger], at the time these acts took place, had no personal issues with the victim." Commonwealth's Sentencing Memorandum, [at] 2. Despite having the testimony of Mr. Foreus, Mr. Audath, and Mr. Leandre, none of the coconspirators testified that [Seger provided] any indication that he possessed the specific intent to kill.
>
> Court[s] have long held that firing a bullet in the general direction in which vital organs are located can create sufficient evidence to support an attempted murder conviction. The Commonwealth did not show any evidence to demonstrate what direction [Seger] fired his gun. At no point during the trial did the

- 7 -

Commonwealth present any evidence as to what room [Joseph] was in during the incident. The only facts that the Commonwealth did establish is that [Joseph] was home at the time of the incident, that [Seger] fired the gun at a window, and that [Joseph] was on the phone with 911. The Commonwealth presented evidence that [Joseph] "[was] in terror screaming, home invasion. Home invasion. Repeatedly." N.T.[,] 4/5/[]22, [at] 153. However, this evidence does not equate to a presumption that [Seger] pointed his gun at [Joseph] nor does this evidence create any indication that [Seger] wanted to kill [Joseph].

There is no possible presumption that can be made that the presence and firing of a revolver, without any additional statements or actions by [Seger], indicated the specific intent to kill. The Commonwealth failed to demonstrate the appropriate *mens rea*. The *actus reus* is not enough to support this conviction.

Trial Court Opinion, 9/29/22, at 18-20 (some citations and unnecessary capitalization omitted).

Here, the facts are not in serious dispute. The core issue is whether the reasonable inferences derived from those facts were sufficient to permit a jury to conclude that Seger possessed the specific intent to kill Joseph. More specifically, the question is whether the record evidence presented by the Commonwealth supports a **reasonable** inference that Seger intended to kill Joseph. Our review confirms that the record evidence does not support such an inference.

What is reasonable in any given case is not easily susceptible to bright-line rules. Nevertheless, Pennsylvania courts have established some guidelines with respect to intent-to-kill jurisprudence. For example, the "use of a deadly weapon directed at a vital organ of another human being justifies a factual presumption that the actor intended death unless the testimony

- 8 -

contains additional evidence that would demonstrate a contrary intent." ***Commonwealth v. Alston***, 317 A.2d 229, 231 (Pa. 1974). This presumption clearly does not apply in this case, as Seger did not shoot at or near a vital organ of Joseph's body. Accordingly, the Commonwealth was required to establish a specific intent to kill through other evidence. ***See Commonwealth v. Cross***, 331 A.2d 813 (Pa. Super. 1974) (affirming a conviction for attempted murder where the appellant fired at the victim while he was sitting in a vehicle, the bullet lodged in the vehicle exterior at a height near the stomach of the victim, the Commonwealth presented evidence of a longstanding feud between appellant and the brother of the victim, and appellant shouted "this is for your brother" immediately prior to firing at the victim); ***see also Commonwealth v. Jackson***, 392 A.2d 1366, 1369 (Pa. 1978) (affirming a conviction for attempted murder where appellant shot a gas station attendant in the shoulder—in the general area in which vital organs are located—during the course of a robbery of the station, and where other circumstances demonstrated appellant's intent to kill, including his statement to his accomplice that "he knows me" before shooting at the attendant in the dark).

In the case *sub judice*, the Commonwealth did not proffer any evidence that Seger verbally indicated, directly or indirectly, his intent to kill Joseph. Nor did the Commonwealth present any other circumstantial evidence to suggest such an intent. At trial, Foreus testified that when he and his cohorts

went to Joseph's apartment, the door to the apartment was open, although there was pushing of the door. ***See*** N.T., 4/4/22, at 57; ***see also*** N.T., 4/5/22, at 28-29 (where Audath confirmed that the assailants were pushing on Joseph's door). At some point, Seger kicked the door. ***Id***. Foreus further testified that, when he and his cohorts realized that law enforcement was aware of the situation, they fled. ***Id***. at 58. Foreus explained that, as the assailants were running away from Joseph's apartment, Seger fired three shots into the window. ***Id***.

The Commonwealth asserts that "Seger and Audath attempted to gain entry into the residence by pushing and kicking the door, and Joseph was speaking from the other side of the door." Commonwealth's Brief at 7 (citing Commonwealth Exhibit 138, which is a recorded police interview of Foreus). If Seger could hear Joseph on the other side of the door, an intent to kill might have been inferred if Seger had shot—at stomach or chest level—through the door toward where the sound of Joseph's voice could be heard. However, Seger did not do so. Instead, Seger moved away from the door and fired shots through a window located to the left of the door as he and the other assailants fled. ***See*** N.T., 4/4/22, at 58. Moreover, the Commonwealth presented no evidence that Joseph was near the window, or that he was visible to Seger from outside of the window when the shots were fired. Indeed, the Commonwealth concedes that "there was no testimony regarding Joseph's actual location." Commonwealth's Brief at 22.

In sum, the Commonwealth only describes its proof of the *actus reus* element of attempted murder (*i.e.*, the act of shooting into the window), and then summarily concludes that the *mens rea* element naturally follows from the proof of the former. It does not. As explained above, the crime of attempted murder occurs when "the defendant had the specific intent to kill **and** took a substantial step towards that goal." **Blakeney**, 946 A.2d at 652 (emphasis added). That the Commonwealth established that Seger took a substantial step does not operate to satisfy its separate burden of proving that Seger had a specific intent to kill Joseph. Thus, even when viewing the evidence of record in a light most favorable to the Commonwealth, the facts cannot support a **reasonable** inference that Seger intended to kill Joseph. **See Franklin**, 69 A.3d at 722.

Order affirmed.

Judge Stabile joins the majority decision.

Judge Bowes files a dissenting memorandum.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/30/2023

- 11 -